```
_____
                                        )
Sandra K Jeffries o/b/o T.J., a minor,  )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )   Civil Action No. 08-2158 (RBW)
                                        )
Michael J. Astrue,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____ )
```

# MEMORANDUM OPINION

Plaintiff Sandra K. Jeffries brings this action on behalf of her son, T.J., against Michael J. Astrue (the "Commissioner"), in his official capacity as the Commissioner of the Social Security Administration (the "Administration"), seeking the reversal of the Administration's denial of Social Security Income Benefits to T.J. pursuant to 42 U.S.C. § 405(g) (2006). Currently before this Court are the defendant's Motion for Judgment of Affirmance and the plaintiff's Motion for Judgment of Reversal or a Remand to the Social Security Administration. After carefully considering the plaintiff's complaint, the administrative record, the parties' motions and their memoranda of law and exhibits submitted in support of their motions,[1] the Court concludes that it must grant in part the defendant's motion, deny in part the plaintiff's motion, and remand this case to the Administration so that the Commissioner may evaluate the teacher's questionnaires that were unavailable to the Administrative Law Judge (the "ALJ") when the ALJ decision being

---

[1] In addition to plaintiff's complaint and the parties' cross-motions for judgment, the Court considered the following documents in reaching its decision: (1) The Memorandum in Support of Plaintiff's Motion for Judgment of Reversal ("Pl.'s Mem.") and (2) The Memorandum in Support of Motion for Judgment of Affirmance and In opposition to Plaintiff's Motion for Judgment of Reversal ("Def.'s Mem.").

challenged by the plaintiff was rendered. Specifically, the Court must grant the defendant's motion in part because contrary to the plaintiff's arguments, (1) the ALJ properly weighed the assessment of a reviewing doctor who concluded that T.J. was functioning at the borderline level of intelligence and (2) the agency's determination was based on an adequately developed administrative record. However, as to the plaintiff's additional challenge of the Appeals Council's failure to consider additional information provided by the plaintiff, the Court must remand this matter to the Commissioner for further review so that the agency may evaluate the evidence that was not available to the ALJ at the time of his or her decision.

## **I. BACKGROUND**

The following facts are part of the administrative record. In 1998, as a young child, T.J. was struck by a car and suffered head injuries. Administrative Record (the "A.R.") at 437-439. Although neurological examinations revealed no signs of brain injury, shortly after the automobile accident T.J.'s test scores began to decline and he appeared to demonstrate traits of a student who had suffered a traumatic brain injury. Id. at 107. From 2002-2005, T.J. underwent numerous neuropsychological evaluations, id. at 108-18, 232-44, 299-302, 415-22, 429-33, and most of the objective medical tests placed T.J. in the low average intelligence range. Id. However, an examination by Dr. Sambhu N. Banik placed T.J. at the borderline level of intelligence, but this test was not based on a full neuropsychological evaluation. Id. at 299-302.

During the 2002-2005 time period, T.J.'s mother and teachers created an individualized education program for T.J. Id. at 107, 134-47, 253, 423-28. In 2004, T.J.'s special education teacher filled out a Teacher Questionnaire provided by the Administration, analyzing T.J.'s abilities in the Administration's six domains of function. Id. at 291-298. In 2007, five other teachers filled out the questionnaires, id. at 449-84, and while these evaluations were initially

unavailable to the ALJ at the time of his decision, they were submitted to the Appeals Council for their consideration in reviewing the ALJ's initial determination, id. at 6-7.

The plaintiff had filed an application for supplemental security income on T.J.'s behalf on June 10, 2004. Id. at 17. The ALJ denied the initial request for a hearing at the agency level, however, the plaintiff appealed that determination to the agency's Appeals Council, which subsequently ordered the ALJ to conduct a hearing. Id. At the February 28, 2007 hearing conducted by the ALJ, T.J. and the plaintiff were represented by counsel and were permitted to provide testimony. Id. After making several findings of fact based on the evidence, the ALJ denied the T.J.'s claim for benefits. Id. at 28. Specifically, the ALJ determined that T.J. "was a school-age child [when] the application was filed"; he was "not engaged in substantial gainful activity at any time relevant to [the] decision"; he had a "severe . . . learning disorder;" but his "impairment or combination of impairments" did not "meet[] or medically equal one of the listed impairments" in the applicable regulations; and his "impairment or combination of impairments" were not "functionally equal[]" to those impairments listed in the applicable regulation that would entitle him to benefits. Id. at 20-21.

In determining whether T.J.'s impairments were functionally equal to those impairments entitling a person to benefits, the ALJ considered "six domains of function[ing]." Id. at 23-28. The ALJ determined that T.J. had less than marked limitations in the areas of acquiring and using information, attending and completing tasks, and health and physical well-being, but that the evidence did not support that T.J. had limitations in the remaining three areas, i.e. interacting and relating with others, moving about and manipulating objects, and caring for himself. Id. In making his findings, the ALJ determined that T.J.'s attention deficit/hyperactivity disorder diagnosis "was too heavily dependant on statements from [T.J.]'s mother and under stated the

3

evaluation of [T.J.]'s teacher." Id. at 20. The ALJ further concluded "that [T.J.]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of . . . [T.J.]'s symptoms are not entirely credible to the extent of being at a marked level." Id. at 22.

The plaintiff appealed the ALJ's decision to the Appeals Council, submitting additional evidence that was unavailable before the ALJ ruling was issued. Id. at 6-7. The Appeals Council rejected the challenges to the ALJ's ruling, but provided no more than a boilerplate explanation for why the newly submitted evidence did not provide a basis for changing the decision, merely stating that the Appeals Council considered the evidence and "found that this information does not provide a basis for changing the [ALJ]'s decision." Id. The plaintiff then appealed that final agency decision to this Court.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court reviewing a benefit determination by the Administration is "confined to determining whether the [ALJ's] decision . . . [was] supported by substantial evidence in the record." Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986). If a district court determines that "[t]he findings of the Commissioner of Social Security as to any fact" are "supported by substantial evidence," they "shall be conclusive." § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Thus, "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." Rossello ex. rel Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008). "[W]here a claim has been denied by the Commissioner of Social Security [,] . . . the court shall review only the question of conformity with such regulations and the validity of such

4

regulations." 42 U.S.C. § 405(g). Thus, a reviewing judge must uphold the ALJ's legal "determination if it . . . is not tainted by an error of law." Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987). Moreover, "[j]udicial review . . . is limited to determining whether . . . the Secretary applied the correct legal standards." Scott v. Shalala, 879 F. Supp. 109, 110 (D.D.C. 1995).

### III. LEGAL ANALYSIS

**A. The Plaintiff's Challenge to the ALJ's Borderline Intellect Determination.**

The first issue for the Court to consider is whether the ALJ properly assessed T.J.'s impairments, specifically whether the ALJ failed to consider a diagnosis by a reviewing doctor, Dr. Sambhu Banik, that T.J. was functioning at the borderline level of intelligence and if so, whether this constitutes reversible error.[2] Pl.'s Mem. at 4; Def.'s Mem. at 9. This issue must be resolved in favor of the defendant.

An appendix to the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f (2010), provides a listing of impairments for which an individual may receive disability benefits. SSA Federal Old-Age Survivors and Disability Insurance Rule, 20 C.F.R. § 404 Subpt. P App. 1 § 112.05(c)-(e) (2010). In evaluating whether a child has a disability under Title XVI of the Act, the Commissioner of Social Security must conduct a multi-step evaluation. 20 C.F.R. § 416.924 (2006). First, the Commissioner must determine if the claimant is performing substantial gainful activity. 20 C.F.R. § 416.924(a)-(b). This determination is known as "step one." Guthrie v.

---

[2] As discussed below, there is a three-step evaluation under Section 416.924 to determine whether a child is disabled and thus qualifies for benefits under the Social Security Act. Guthrie v. Astrue, 604 F. Supp. 2d 104, 107 (D.D.C. 2009) (noting that the three evaluative steps are "(1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or a combination of impairments that is severe; and (3) whether the child has an impairment(s) that meets, medically equals, or functionally equals the listings"). The defendant argues that the plaintiff's challenge is limited to whether or not the ALJ should have considered T.J.'s alleged borderline intellect at step two, Def.'s Mem. at 8, however, the plaintiff's argument is not limited to considerations at step two as the plaintiff argues that " the [ALJ] failed to evaluate the Plaintiff's borderline intellect at step two, or any other step of the sequential evaluation process," Pl.'s Mem. at 4 (emphasis added).

5

Astrue, 604 F. Supp. 2d 104, 107 (D.D.C. 2009) (explaining the "three-step sequential evaluation [that] is used to determine whether a child is eligible for [benefits] on the basis of a disability") (citing 20 C.F.R. § 416.924). If the Commissioner finds at step one that the claimant can perform substantial gainful activity, the Commissioner must conclude that the claimant is not disabled. 20 C.F.R. § 416.924(a)-(b). If, on the other hand, the Commissioner find that the claimant is not performing substantial gainful activity, the Commissioner will move on to "step two" and assess the claimant's physical or mental impairment or combination of impairments to determine if the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a), (c). If the Commissioner finds that the claimant does not have a severe impairment or combination of impairments, the claimant will be deemed "not disabled." Id. However, if the impairment (or combination of impairments) is found to be severe, the Commissioner will move on to step three and determine if the claimant's impairment(s) meet, medically equals, or functionally equals "an impairment in the listings."[3] 20 C.F.R. § 416.924(a), (d). If the claimant has such impairments and the impairments "meet the duration requirement," the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.924(a).

**1. The Plaintiff's Step Two Challenge**

The plaintiff argues that the ALJ's failure to consider Dr. Banik's determination that T.J. has borderline intellect constitutes reversible error. Pl.'s Mem. at 4. However, as the defendant correctly points out, once the ALJ determined at step two that T.J. has an impairment that is

---

[3] The process of determining whether or not an impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment is determined by 20 C.F.R. §§ 416.925-416.926a. Here, the plaintiff's challenge is limited to an alleged failure by the ALJ to consider all the relevant evidence at each stage of the evaluation, not a challenge that the impairments actually meet, are medically equal or functionally equal to a listed impairment. Therefore, the Court need not address the assessment of whether T.J.'s impairments meet or equal a listed impairment.

6

severe and therefore proceeded to step three, the ALJ was not required to consider T.J.'s alleged borderline intellect at step two. Def.'s Mot. at 9.

The District of Columbia Circuit has not directly addressed to what extent an ALJ must consider all of a claimant's impairments at step two but finds that the claimant has satisfied step two's severity requirement. See Blackmon v. Astrue, No. 04-1347, 2010 WL 2607215, at *9 (D.D.C. June 30, 2010) (noting that "it appears that the [District of Columbia] Circuit has not yet addressed the question" of whether an error at step two of the evaluation process requires reversal). However, a member of this Court recently agreed with the Sixth, Ninth, and Tenth Circuits in their finding "that alleged errors at step two do not necessarily require reversal so long as the ALJ considered the omitted impairment(s) in evaluating the remaining steps in the sequential analysis."[4] Id.; see also Maziarz v. Sec. of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (holding that the Commissioner's failure to consider one impairment at step two "could not constitute reversible error" where the Commission found at step two that the plaintiff's other conditions were severe and therefore proceeded to step three in the evaluation process); Nejat v. Comm'r of Soc. Sec., 359 Fed. Appx. 574, 577 (6th Cir. 2009) (finding that "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error") (citation omitted). Here, as in Nejat and Maziarz, the ALJ concluded that T.J. satisfied the requirements of step two and continued to the next step. Similarly, a member of this Court recently found that failure to consider evidence at one stage of the

---

[4] The Court is cognizant of the fact that these cases addressed 20 C.F.R. § 404.1520, which addresses the evaluation of disabilities in general rather than 20 C.F.R. § 416.924, which addresses evaluations of the disabilities of children. However, the progression from step two to step three under both regulations is identical, as under both regulations step two is merely a threshold for proceeding to the analysis at step three.

7

administrative process is not an error when the evidence is properly considered at a later stage of the process. See Blackmon, 2010 WL 2607215, at *11 (holding that "the Court need not determine whether the ALJ's finding of non-severity as to [the] Plaintiff's depression, neuropathy, and borderline intellect was legal error, as any alleged error at step two did not prejudice Plaintiff and therefore does not require reversal"). Because the ALJ proceeded to step three, failure to consider any evidence at step two could not have prejudiced T.J.'s opportunity to receive a full benefits determination and thus does not constitute reversible error. See id.; Maziarz, 837 F.2d at 244.

### 2. The Plaintiff's Challenge at Any Other Step

The plaintiff also argues that the ALJ failed to consider Dr. Banik's report "at any other step of the sequential evaluation process," and because the ALJ "failed to provide any rationale for implicitly rejecting" Dr. Banik's report, the ALJ's analysis "defies review." Pl.'s Mem. at 4-5. Essentially, the plaintiff appears to be presenting two arguments: (1) that the ALJ failed to consider the report, and alternatively, (2) the ALJ considered but implicitly and improperly rejected it. The plaintiff relies on See v. Washington Metropolitan Area Transit Authority, 36 F.3d 375 (4th Cir. 1994), in which the Fourth Circuit held that an ALJ, "when faced with evidence in the record contradicting his conclusion[,] . . . must affirmatively reject that contradictory evidence and explain his rationale for so doing." Id. at 384; see also Thomas v. Astrue, 677 F. Supp. 2d 300, 309 (D.D.C. 2010). The plaintiff's argument fails for two reasons: the record shows that the ALJ considered Dr. Banik's report, and even assuming that the ALJ implicitly rejected Dr. Banik's report, the ALJ was warranted in doing so because the evidence did not contradict his conclusion.

First, the ALJ did consider Dr. Banik's report. See A.R. at 22. The plaintiff is correct that the Administration's regulations state that it "will evaluate every medical opinion [it] receive[s]," Pl.'s Mem. at 5 (quoting 20 C.F.R. § 416.927(d) (2009)); however, it does not follow, as plaintiff posits, that "in implicitly determining that [T.J.'s] borderline intellect was non-severe, the [ALJ] failed to evaluate the opinion of [Dr. Banik]," and that "[a]s a result, the [ALJ's] determination fails to be supported by substantial evidence," Pl.'s Mem. at 5-6. On the contrary, it is clear from the record that the ALJ considered Dr. Banik's report as he specifically cited it when determining that "[t]he objective medical evidence is relatively consistent in placing the T.J. in the low average to average range." A.R. at 22 (citing Dr. Banik's report, Exhibit 8F of the record before the ALJ, along with an occupational therapy evaluation, three neuropsychological evaluations, and an educational assessment as the "objective medical evidence" considered) (emphasis added). Rather than rejecting Dr. Banik's report, as plaintiff argues, Pl.'s Mem. at 5, the ALJ concluded that the report was relatively consistent with other medical reports, A.R. at 22. Second, while Dr. Banik's report is not as consistent with the other reports in the administrative record as the defendant would have the Court conclude, see Def.'s Mem at 12-15, it is still relatively consistent with the other reports. And upon the Court's review of the report, it does not contradict the ALJ's decision to deny T.J. benefits.

Dr. Banik's determination that T.J. was functioning at the borderline level was based on T.J.'s Full Scale IQ of 74, A.R. at 302, and the plaintiff argues that this determination coupled with Dr. Banik's observations that the plaintiff had "poor reading, attention and concentration . . . [i]nexplicably" demonstrates that the ALJ "failed to evaluate this evidence," Pl.'s Mem. at 4. Like the other IQ scores that the ALJ relied upon, the evidence relied upon by Dr. Banik does not alone entitle T.J. to benefits, see SSA Federal Old-Age Survivors and Disability Insurance Rule,

9

20 C.F.R. § 404 Subpt. P App. 1 § 112.05 (2010), and it therefore does not contradict the ALJ's conclusion. Under the regulation just referenced, a claimant has the requisite level of severity to qualify as having a disability if his IQ is less than 59 or he has an IQ between 60 and 70, if coupled with other significant impairments. See id. In denying T.J.'s claim for benefits, the ALJ did not find that the objective medical evidence was insufficient to entitle T.J. to benefits; rather, the ALJ determined that "the statements concerning the intensity, persistence and limiting effects of . . . [T.J.]'s symptoms are not entirely credible to the extent of being at a marked level." A.R. at 22. And as set forth in the regulation outlining the multi-step evaluation process, the ALJ must determine both that T.J. had the requisite impairment and that the impairment met the duration requirements. 20 C.F.R. § 416.924(a), (d).

Under the Administration's regulations, Dr. Banik's report is not controlling and is not entitled to significant weight. Although the Administration's regulations require the ALJ to evaluate every medical opinion, not every medical opinion is treated as controlling or given equal weight. 20 C.F.R. § 416.927(d) delineates factors to be considered in determining the weight given to any medical opinion, including how to determine if a source is controlling. A source is accorded controlling weight if it is a treating source and the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). If a treating source is not considered controlling, the Administration considers the following factors to determine the weight an opinion from such a source is given: the examining relationship, treatment relationship, length of treatment relationship, nature and extent of treatment relationship, supportability, consistency, specialization and other factors which tend to support or

contradict the opinion. 20 C.F.R. § 416.927(d)(1)-(6). Here, Dr. Banik's opinion is not controlling and no other factors suggest giving the report significant weight.

Dr. Banik's report is not controlling because he was not a treating source. Treating sources are given more weight because they "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). Here, Dr. Banik only examined T.J. on one occasion, and as the plaintiff admits, Dr. Banik was a "consultative examiner," Pl.'s Mot. at 3, not a treating physician.

Additionally, based on the factors listed in the regulation, Dr. Banik's report is not entitled to significant weight. First, it is unclear from his report and there is no other evidence suggesting that Dr. Banik actually examined T.J., rather, it appears he relied, at least in part, on a separate examiner. See A.R. at 299 ("Type of Report: Disability Examiner: Kramer, A."). Second, as noted above, Dr. Banik is not T.J.'s treating physician. Third, as the plaintiff argues, the report is either inconsistent with other reports and is therefore entitled to less weight, see Pl.'s Mot. at 4-6, or as the defendant argues and the ALJ concluded, it is consistent with other reports, see Def.'s Mot. at 11; A.R. at 22, and was therefore assessed in the ALJ's analysis. Finally, Dr. Banik's report was not based on a complete neuropsychological evaluation. A.R. at 302.

The Court reiterates that its review of Dr. Banik's report does not lead it to the conclusion that his report contradicts the ALJ's decision. And, because the report does not "contradict[] his conclusion," the ALJ did not have a duty to "affirmatively reject . . . [the] evidence and explain his rationale for so doing." See, 36 F.3d at 384 (emphasis added). The Fourth Circuit in See requires an ALJ to affirmatively reject evidence and explain his or her rational for so doing only if the evidence contradicts the ALJ's conclusion, not merely if the evidence varies to any degree

11

from evidence upon which the ALJ relies.  Id.  Accordingly, the Court will not overturn the ALJ's decision based on Dr. Banik's report.

### B. The Appeals Council's Duty to Explain Its Decision.

The plaintiff argues that "the Appeals Council failed in its duty of explanation" regarding "new and material" evidence submitted by the plaintiff after the hearing before the ALJ.  Pl.'s Mem. at 6.  Specifically, the plaintiff argues that the Appeals Council failed to adequately consider five questionnaires prepared by her son's tenth grade teachers, id. at 8, and in failing to so do, the Administration's decision is not based on substantial evidence, or alternatively, that this Court cannot determine whether substantial evidence supports the Administration's decision.  Id. at 6, 9.

Under the Social Security Act, the Appeals Council will review a case if, among other things,[5] "[t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence."  20 C.F.R. § 416.1470(a) (2010).  Moreover, the regulations provide that the Appeals Council will only review a case "if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 416.1470(b).  A claimant may submit additional evidence to the Appeals Council, but this evidence must be considered only if it "is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Wilkins v. Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc); see also 20 C.F.R. § 416.1470(b).  "Evidence is new within the meaning of this section if it is not duplicative or cumulative."  Wilkins, 953 F.2d at 96.  Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome."  Id.

---

[5] No such additional grounds are relied upon by the plaintiff in her submissions filed with the Court.

When the Appeals Council denies review, as it did here, the ALJ's decision represents the agency's final decision. Wilkins, 953 F.2d at 96; see also 20 C.F.R. § 404.981 (2010). If the appeals council denies review despite the submission of additional evidence, a failure to address such evidence can, but does not necessarily, warrant remand to the agency.[6] Banks v. Astrue, 537 F. Supp. 2d 75, 80 (D.D.C. 2008). Where the Appeals Council denies review without addressing the additional evidence and the "additional evidence is 'conflicting' or presents 'material competing' evidence or 'calls into doubt any decision,' remand is necessary." Id. at 80 (internal citation omitted) (emphasis added). "But where . . . the [additional] evidence is duplicative or has no reasonable possibility to change the outcome, remand is unnecessary." Id. (citation omitted). Further, the plaintiff must show good cause for failing to present the evidence to the ALJ. Wilkins, 953 F.2d at 96 n.3.

The importance of having the Appeals Council address the impact of new and material evidence stems from the limited role Courts have in reviewing the Administration's decisions. Bryant v. Barnhart, No. 6:04-CV-17, 2005 WL 1804423, at *2 (W.D. Va. Jan. 21, 2005) (noting that "[i]n reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [administrative decisionmaker]") (internal citation omitted); Harmon v. Apfel, 103 F. Supp. 2d 869, 871-72 (D.S.C. 2000) (noting that the "court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of

---

[6] There is some debate amongst federal courts over the extent to which the appeals council is required to make specific findings as a result of the submission of additional evidence after the ALJ's decision was issued. See Bryant v. Barnhart, No. 6:04-CV-17, 2005 WL 1804423 *3-5 (W.D. Va. Jan. 21, 2005) (discussing how different courts have addressed this issue). The District of Columbia Circuit has not addressed the issue. However, it is unnecessary to resolve this issue here, as both parties agree that if new evidence conflicts with, contradicts, or calls into doubt the ALJ's decision, then remand is necessary. Pl.'s Mot. at 9; Def.'s Mot. at 16-17.

13

the ALJ"). This Court agrees with such an approach. It is the Administration's duty to determine the weight of evidence and resolve evidentiary conflicts and this Court may not substitute its judgment for that of the Administration. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in order for this Court to determine whether the Administration's decision is supported by substantial evidence, the Appeals Council must explain evidence which is both new and material. See Bryant, 2005 WL 1804423, at *5. On both of these prongs the plaintiff prevails.

First, it is clear that the evidence was new. The plaintiff maintains that the additional questionnaires are new because, in contrast to the one questionnaire presented to the ALJ, the additional submissions "reveal[] that [T.J.] has obvious to very serious problems" in multiple areas in two "domain[s] of function." Pl.'s Mem at 8. The defendant, on the other hand, argues that the evidence submitted regarding T.J. "was akin to, or cumulative of the evidence already in the record," as "none of [the additional questionnaires] stated that [T.J.] was markedly impaired to a level where he could not succeed with the proper treatment." Def.'s Mem. at 17. Specifically, the defendant argues that the T.J.'s seventh grade teacher, whose questionnaire was before the ALJ, "had a very similar assessment." Id. However, even if the defendant is correct, its position does not mean the evidence is not new, as the questionnaires at issue here were completed three years after the questionnaire upon which the ALJ relied. Thus, the additional questionnaires must be considered new evidence because even if duplicative in substance, they have the potential of demonstrating that T.J.'s condition has not improved during the intervening three years.

Second, the evidence is material. The plaintiff argues that the additional questionnaires are material because they "directly contradict[] and undermine[] the [ALJ]'s conclusion that

[T.J.] had less than marked limitations" in two domains of function. Pl.'s Mem. at 9. The defendant, on the other hand, argues that the evidence "does not contradict, conflict with, or call into doubt, the ALJ's decision." Def.'s Mem. at 18. However, after evaluating the additional questionnaires, the Court concludes that "there is a reasonable possibility that the new evidence would have changed the outcome," and thus the additional questionnaires are material. Wilkins, 953 F.2d at 96.

The ALJ determined T.J.'s "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the [plaintiff]'s symptoms are not entirely credible to the extent of being at a marked level." A.R. at 22. Further, the ALJ accorded the 2004 teacher evaluation, the only evaluation available to the ALJ, "significant weight," A.R. at 22, having relied upon it in analyzing T.J.'s six domains of function, A.R. at 22- 28.

In the domain of "attending and completing tasks" the ALJ concluded that T.J. had a less than marked limitation. A.R. at 24. The ALJ's conclusion was based on the 2004 teacher evaluation, which "reflect[ed] his questionable diagnosis of attention deficit/hyperactivity disorder." Id. This evaluation placed T.J. in the slight to obvious problem range for the attending and completing tasks domain. A.R. at 293. In contrast, the additional questionnaires put T.J. in the obvious to serious range for this domain, A.R. at 451, 459, 467, 475, 482, with one evaluation placing him in the very serious problem range for this domain, A.R. at 467. This evidence, if given significant weight, can be seen to contradict the ALJ's conclusion that T.J. has a less than marked limitation in the domain of attending and completing tasks; therefore, the evidence is material.

While this evidence may not have been accorded significant weight by the ALJ (if it had been available to him) or by the Appeals Council and the evidence may not have changed the Administration's decision to deny benefits, it is not within the province of this Court to determine how this evidence should have been evaluated by the Commissioner. Therefore, the Court must remand this case to the agency so it can evaluate the additional evidence that was not available to the ALJ, and in conducting this analysis, more than the boilerplate language that the "information does not provide a basis for changing the [ALJ]'s decision," A.R. at 6-7, must be provided. Bryant, 2005 WL 1804423, at *5 (noting that "[w]hile the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding late breaking evidence, its failure to deal with such evidence . . . runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence . . .[and] . . . the agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided") (emphasis added).

**C. The Development of the Administrative Record.**

Finally, the Court must address the plaintiff's contention that the ALJ had a duty to adequately develop the administrative record and that the ALJ failed in this duty by not obtaining updated evidence from T.J.'s teachers. Absent proper record development at a Social Security Administration hearing, "the [Commissioner]'s decision cannot stand." Poulin v. Bowen, 817 F.2d 865, 871 (D.C. Cir. 1987). While the "[ALJ] has an affirmative duty to develop a complete administrative record, including arguments both for and against granting benefits," Krishnan v. Barnhart, 328 F.3d 685, 695 (D.C. Cir. 2003) (internal quotations and citations omitted),[7] and

---

[7] The plaintiff cites case law from another circuit that imposes a heightened duty on ALJs to develop the record "when a claimant appears without the assistance of counsel." Pl.'s Mem. at 10 (quoting Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980). This Circuit also follows this rule. Krishnan v. Barnhart, 328 F.3d 685, 695 (D.C. Cir.
(continued . . .)

the ALJ is "charged with developing the facts," the ALJ "does not act as council" for the claimants. Richardson, 402 U.S. at 410.

Here, the plaintiff argues that the record before the ALJ was devoid of evidence or observations from any of T.J.'s teachers for a period of thirty four months and that, "the [ALJ] failed to attempt to obtain any updated evidence from any of the [p]laintiff's teachers, or from any of the [p]laintiff's schools." Pl.'s Mem. at 11. The record before the Court, however, indicates that the ALJ granted several continuances specifically for the purpose of obtaining this evidence. A.R. at 17. Further, as already discussed, this evidence was available when the Appeals Council made its decision and was therefore incorporated into the record. See Simms v. Sullivan, 877 F.2d 1047, 1050-51 (D.C. Cir. 1989) (finding that where claimant was unrepresented at administrative hearing, "the ALJ was not remiss when, upon being informed that one of appellant's treating physicians was still 'doing some testing,' he did not suspend the proceedings to await new test results" and "moreover . . . not[ing] that the Appeals Council had the new test data before it when it declined to review the ALJ's decision"). Because this evidence was available to the Appeals Council, and the Court is remanding this case for the Commissioner to evaluate the teacher's questionnaires that were unavailable to the ALJ, the claim that the ALJ failed to develop the record must be rejected.

## IV. CONCLUSION

For the forgoing reasons, the Court finds that the ALJ properly considered Dr. Banik's report and properly developed the administrative record; however the Court must remand the

---

(. . . continued)
2003); Poulin v. Bowen, 817 F.2d 865, 870, (D.C. Cir. 1987). However, the plaintiff was represented by counsel at the ALJ hearing, A.R. at 17, making this consideration irrelevant here.

17

case to the Commissioner to evaluate the teacher's questionnaires that were not available to the ALJ.[8]

                                                                               _____/s/_____
                                                                            REGGIE B. WALTON
                                                                            United States District Judge

---

[8] A consistent Order accompanies this Memorandum Opinion.

18